Thomas R. Curtin
Anthony M. Carlino
Kathleen N. Fennelly
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100

Amanda J. Hettinger
(*Pro Hac Vice Application to be filed*)
Robyn H. Ast-Gmoser
(*Pro Hac Vice Application to be filed*)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, a Delaware limited liability company; and CHARTER COMMUNICATIONS OPERATING, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br>  vs.<br><br>EASY PAY SOLUTIONS LLC, a New Jersey limited liability company; ARSLAN KHALID, an individual; and JOHN DOES 1-5,<br><br>        Defendants. | **Civil Action No.**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Charter Communications Holding Company, LLC ("**CCH**") and Charter Communications Operating, LLC ("**CCO**") (collectively, "**Charter**" or "**Spectrum**") state as follows for their Complaint for Fraud, Civil Conspiracy, Federal Trademark Infringement, Federal Unfair Competition, Unfair Competition under New Jersey Fair Trade Act, and Common Law Unfair Competition against Defendant Easy Pay Solutions LLC ("**Easy Pay**"), Defendant Arslan Khalid ("**Khalid**") (collectively "**Defendants**"[1]), and Defendants John Does 1-5.

---

[1] "Defendants" also includes any authorized representative of Easy Pay.

## NATURE OF THE ACTION

1.     Charter is one of the country's largest communications providers, and is widely recognized by consumers as a reliable and reputable provider of communications services.

2.     According to the FBI, malicious cyber activity is a threat to public safety and national and economic security.   Impersonation of legitimate businesses in an effort to obtain sensitive financial and personal information from consumers is a rapidly growing, serious cyber problem in the United States, impacting all sectors of businesses, including the communications sector.

3.     Defendants, without authorization, impersonate Charter, defrauding its subscribers by stealing sensitive financial and other information.

4.     Defendants likewise defraud Charter directly by impersonating subscribers of Charter, without authorization, and providing Charter with fraudulent payment information.

5.     Defendants initiate their fraudulent scheme by sending unauthorized and unsolicited text messages to subscribers of the CHARTER SPECTRUM and SPECTRUM brands of communication services.  These text messages falsely hold Easy Pay out as an authorized agent of Spectrum (which is Charter's brand name), or even as Spectrum itself, and promise a discount on a subscriber's monthly Spectrum bill if he or she makes a payment through Easy Pay.  When a subscriber responds, Defendants steal the subscriber's credit card or banking information and make a payment directly to themselves.   Defendants then contact Charter, posing as the Charter subscriber, and use invalid payment information to make a false "payment" to Charter. That payment is later reversed, leaving the subscriber's monthly bill unpaid.

6.     Defendants perpetuate their fraud by intentionally utilizing the CHARTER,

CHARTER SPECTRUM, and SPECTRUM family of marks in both text messages and telephone conversations with Charter subscribers.

7.      Charter brings this action to hold Defendants accountable for their actions and to protect the public from the ongoing threat posed by Defendants' fraudulent scheme.

8.      This is an action for (i) fraud under New Jersey common law; (ii) civil conspiracy under New Jersey common law; (iii) infringement of registered trademark(s) in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (iv) false designation of origin and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) unfair competition under the New Jersey Fair Trade Act, NJ Rev Stat § 56:4, *et seq.*; and (vi) common law unfair competition.

## THE PARTIES

9.      Plaintiff Charter Communications Holding Company, LLC is a Delaware limited liability company with its principal place of business at 12405 Powerscourt Drive in St. Louis County, Missouri.

10.     Plaintiff Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business at 12405 Powerscourt Drive in St. Louis County, Missouri.

11.     Defendant Easy Pay Solutions LLC is a New Jersey limited liability company with a registered address of 3407 Wells Drive, Parlin, New Jersey 08859.

12.     Defendant Arslan Khalid is an individual residing in the State of New Jersey with a residence at 3407 Wells Drive, Parlin, New Jersey 08859. Khalid is the sole member and manager of Easy Pay.

13.     Defendants designated herein as John Does 1-5 are the individuals and/or entities

who instructed, coached, and/or counseled Defendants on setting up, and participating in, the fraudulent scheme as described herein.  The identity of John Does 1-5 is presently unknown to Charter.  Charter will amend the Complaint to name the unidentified individuals and/or entities once it has learned their names through discovery.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to: (i) 28 U.S.C. §§ 1331, 1338(a) and (b), 15 U.S.C. § 1121, as an action for violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and (ii) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this judicial district.

16.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

17.     Specifically, Defendants operate their fraudulent scheme from New Jersey, have purposefully targeted subscribers of Charter's Spectrum-branded services ("Charter subscribers"), including those residing in New Jersey, sent fraudulent solicitations (text messages) to Charter subscribers residing in New Jersey, and interacted with Charter subscribers in New Jersey through phone calls and text messages.

## FACTS GIVING RISE TO THIS ACTION

## KHALID FORMS EASY PAY FOR FRAUDULENT PURPOSES

18.     On or about June 15, 2021, Defendant Easy Pay, through authorized representative Arslan Khalid, filed a Certificate of Formation with the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services.  *See* **Exhibit A**, Certified Copy of

Certificate of Formation.

19.     The effective date of the filing is listed as June 16, 2021.  *See* Exhibit A.

20.     The Certificate of Formation states the alleged business purpose of Easy Pay is to "provid[e] IT services like digital marketing, search engine optimization (SEO), web designing & development, [and] graphics designing."  *See* Exhibit A.

21.     This is not the business purpose of Easy Pay.  Rather, Easy Pay was formed to commit fraud and engage in unfair competition, conspire to engage in fraud and unfair competition, and commit other unlawful activities as detailed throughout this Complaint.

22.     Khalid is the sole member of Easy Pay and the registered agent of Easy Pay.  *See* Exhibit A.

23.     Khalid is the sole manager of Easy Pay and, on information and belief, has complete control of Easy Pay's actions.

24.     Khalid is aware of the fraudulent activities of Easy Pay, directs that conduct, and personally benefits from the fraudulent conduct.

25.     On information and belief, Easy Pay is not adequately capitalized and does not observe necessary corporate formalities.

26.     Khalid and Easy Pay share the same address of 3407 Wells Drive, Parlin, New Jersey 08859.  3407 Wells Drive, Parlin, New Jersey 08859 is a residential address.  Khalid was registered to vote at this address and has registered a motor vehicle he personally owns at this address.

## DEFENDANTS' FALSE REPRESENTATIONS AND FRAUD

27.     Soon after Khalid formed Easy Pay, and at least as early as June 18, 2021, Defendants began sending text messages to Charter subscribers using the CHARTER,

CHARTER SPECTRUM, and SPECTRUM family of marks, falsely stating the subscribers could receive a discount on their Spectrum bills if paid through Easy Pay.

28.     Defendants' fraudulent business scheme, which began on or about June 18, 2021, is carried out against Charter and Charter subscribers as follows:

      a.     Defendants send a text message offering Charter subscribers a discount on their Spectrum bill if they use Easy Pay to facilitate the payment – that text message contains the infringing use of Charter's trademarks;

      b.     A subscriber responds to the text message link by phone or a responsive text message with the assumption he is communicating with Charter or an authorized vendor for Charter;

      c.     The subscriber provides Defendants with information, including name, Spectrum account information (service address, account number, security code) and financial information;

      d.     Using the subscriber's fraudulently obtained Charter account details and other information, Defendants call Spectrum impersonating the subscriber and make a payment on the account using a stolen credit card or invalid checking account;

      e.     Defendants are provided with a payment confirmation number;

      f.     Defendants send the payment confirmation number and payment amount to the subscriber via text message;

      g.     Defendants then initiate a payment to Easy Pay from the subscriber's own bank account (or credit card) for the agreed discounted amount;

      h.     The payment made by Defendants to the subscriber's Spectrum account is ultimately rejected by the financial institution (e.g., for invalid checking account or stolen/closed

credit card); and

   i. The subscriber's Spectrum account consequently shows a payment

reversal, and the account remains unpaid.

  29. On or about October 20, 2021, Spectrum was contacted by a subscriber in regards

to an alleged payment dispute.  The subscriber shared that she had received a text from someone

purporting to offer a discount on her monthly Spectrum bill, that she provided her banking

information, and was provided with the following text message:



  30. Defendants sent the above message to this Charter subscriber falsely stating,

among other things, that "EASY PAY SOLUTIONS" is an "Authorized Retailer of CHARTER

SPECTRUM" and purporting to accept payment on behalf of Charter.

  31. Defendants sent a similar text message to a different Charter subscriber on or

about October 31, 2021.

32.     As demonstrated in the text message below, Defendants falsely stated, among other things, they were "The Authorized Retailer of CHARTER SPECTRUM" and purported to accept payment on behalf of Charter.



33.     These exemplar texts are just two of many believed to have been sent by Defendants to Charter subscribers.

34.     On or about October 26, 2021, a Charter representative attempted to contact Defendants at the phone number provided in the above text messages: (858) 221-7978.  A representative of Defendants answered the phone and stated: "This is Spectrum's billing

8

department."  The representative further stated that Easy Pay is "an authorized retailer of Spectrum located in San Diego."  These statements are FALSE.  On this call, Charter's representative stated that Defendants' conduct was not authorized by Charter.  In response, Defendants' representative disconnected the call, and Charter's return calls to the same phone number went unanswered.

35.     Defendants' conduct is ongoing and continues to date, and Charter and its subscribers continue to be victimized by Defendants' scheme, which improperly capitalizes on the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and good will.

36.     Defendants, through their agents, employees and other representatives, represented and continue to represent that they are associated with Charter or its Spectrum brand, which is FALSE, and Defendants are aware the representation is false.

37.     Defendants make these false representations with the intent to mislead Charter subscribers into taking an action based on the misrepresentations.  Charter subscribers reasonably relied on the false representations, were misled, and in reliance on the misrepresentations, took the action intended and provided the financial, account, and other information requested by Defendants.  As a result of Defendants' actions, Charter subscribers were injured.

38.     Defendants, through their agents, employees and other representatives, also represented and continue to represent to Charter that they are Charter subscribers making a valid payment due on the subscribers' accounts, which is FALSE, and Defendants are aware the representation is false.

39.     Defendants further made these false representations with the intent to mislead Charter into taking an action.  Charter reasonably relied on the false representations that

Defendants were the subscribers Defendants were impersonating, and further relied on Defendants' payment methods provided to Charter as valid and authorized.  As a result, Charter took the action Defendants intended, and was injured.

40.     Defendants misappropriated payments for Charter's services that rightfully belong to Charter and have misappropriated and infringed upon Charter's intellectual property.

41.     Defendants' wrongful actions directed towards Charter and its subscribers were and are willful and wanton and taken in direct disregard of Charter's rights and responsibilities, and have caused and continue to cause harm to Charter.

## CONCERTED UNLAWFUL ACTIVITIES

42.     Smishing is a form of cyber fraud in which a criminal, pretending to be a legitimate entity, sends a text message to a victim.

43.     Defendants did not come up with the fraudulent and infringing scheme set forth in this Complaint in a vacuum.

44.     In fact, Charter subscribers have notified Charter of nearly identical fraudulent and infringing schemes perpetuated by other individuals and companies operating in a manner similar to Defendants.

45.     Defendants worked in concert with one or more John Does to learn how to set up the fraudulent and infringing scheme Defendants have perpetuated and continue to perpetuate on Charter and its subscribers, as described herein.

46.     On information and belief, this/these John Doe(s), in and around the time Easy Pay was formed in June of 2021, instructed Defendants as to how to structure Easy Pay to exist for purpose of a criminal enterprise and taught Defendants how to impersonate Charter, infringe upon the CHARTER, CHARTER SPECTRUM and SPECTRUM family of marks, how to lure

victims into providing Defendants with confidential financial and other sensitive information, how to impersonate these victims in interactions with Charter, and how to obtain and use fraudulent payment mechanisms in interactions with Charter through the internet, phone, and/or other means.

47.     Defendants then intentionally and knowingly committed these unlawful activities, which caused harm to Charter and to Charter subscribers, and resulted in damage to Charter.

## CHARTER'S INTELLECTUAL PROPERTY

48.     CCH is the owner of federally registered service marks "CHARTER," "CHARTER SPECTRUM" and "SPECTRUM."  *See* **Exhibit B**.

49.     CCH is also the owner of dozens of other federally registered marks and designs for communications-related services that incorporate the SPECTRUM brand, such as: SPECTRUM TV, SPECTRUM INTERNET, and SPECTRUM BUSINESS.  A list of registered marks is attached as **Exhibit C** (collectively referred to herein as the SPECTRUM family of marks).

50.     CCO and other related Charter entities use the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and designs with permission of CCH.

51.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and designs are well known and are used across the United States.

52.     Charter and its related entities have invested significant time, effort, and resources in the development and promotion of their business and the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks throughout the United States.

53.     Charter has developed substantial good will in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and has acquired rights, both by virtue of

federal trademark registrations and by common law rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

54. Defendants' actions, described above, have threatened and impaired the good will and reputation of Charter and the services provided under the CHARTER SPECTRUM and SPECTRUM name.

55. Defendants have intentionally and deceptively misappropriated and used the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks to defraud Charter and its subscribers.

<u>**CONSUMER CONFUSION AND RESULTING INJURY TO CHARTER**</u>

56. Defendants' infringing use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks has caused and is likely to continue to cause consumer confusion regarding the source of goods and/or services in the communications market and the companies with which Charter chooses to associate.

57. Charter uses the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks for services related to the provision of communications products and services.

58. The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are strong and have nationwide recognition.

59. Charter uses the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks on its website, on TV commercials, in print ads, in radio ads, in internet ads, in direct (written and verbal) communications with its subscribers, on hardware related to the provision of services, and many other streams of commerce and marketplaces.

60. Defendants use "CHARTER SPECTRUM" and "SPECTRUM," which are identical to CCH's registered marks.

61.     Defendants use "CHARTER SPECTRUM" and "SPECTRUM" in relation to a fraudulent scheme designed to steal money from Charter subscribers and defraud Charter and its subscribers under the guise of assisting Charter subscribers to pay their Spectrum-branded bills at a discount.

62.     Defendants have infringed the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in written and oral communications to Charter subscribers.

63.     Defendants created a false association between Easy Pay and Charter by stating that Easy Pay is authorized to work with Charter subscribers on Charter's behalf.

64.     On information and belief, Defendants intended to create a false association between Easy Pay and Charter by stating that Easy Pay is authorized to work with Charter subscribers on Charter's behalf.

65.     Charter has never consented to Defendants using the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

66.     Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks has caused Charter subscribers to be confused and to form a false association between Easy Pay and Charter.

67.     The false association created in the consumer's mind is to Defendants' benefit and Defendants have willfully taken advantage of the false association to defraud Charter and its subscribers.

68.     Defendants' infringement of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks is the key to Defendants' fraudulent scheme and the infringement is designed to rely on Charter's established good will in the SPECTRUM brand to gain victims' trust.

13

69.     Charter subscribers have actually been confused by Defendants' infringing use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

70.     Charter subscribers have fallen victim to Defendants' intentional creation of a false association between Charter and Easy Pay.

71.     Defendants are likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, thereby causing Charter irreparable harm.

72.     Defendants' continued use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks after notice from Charter of infringement, renders Defendants' continued infringement intentional and willful.

## FIRST CLAIM FOR RELIEF

### (Against Defendants For Common Law Fraud)

73.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

74.     Defendants' fraudulent business scheme is detailed in Paragraphs 3-6 and 18-72.

75.     Defendants made false and material representations and omissions to Charter, including but not limited to:  (i) stating that Defendants were Charter subscribers; (ii) using Charter subscribers' account information to lure Charter into relying on this false representation; (iii) purporting to make a payment on the impersonated Charter subscriber's account; and (iv) instead utilizing false and fraudulent payment information to induce Charter to provide Defendants with payment confirmation.

76.     These material representations and omissions, as set forth above, were false.

77.     Defendants further knowingly made these false representations with the intent to mislead Charter into taking an action based on the misrepresentations.

78.     Charter reasonably relied on the false representations that Defendants were Charter subscribers, and further relied on Defendants' representations that the payment methods being provided to Charter were valid.  As a result, Charter took the action Defendants intended, and was injured as a result.

79.     In furtherance of their scam, Defendants also made false representations and omissions to Charter subscribers, specifically with the intent to defraud Charter and Charter subscribers of payments that should have been made to Charter.  These false representations and omissions include, but are not limited to, the following: (i) stating that Easy Pay was associated with Charter; (ii) that Easy Pay was authorized to interact with Charter subscribers; (iii) that Easy Pay would arrange payment of the balance due on Charter subscribers' accounts at a discount; and (iv) that the money Easy Pay took from the subscriber would be used to pay Charter.

80.     These representations and omissions, as set forth above, were false.  Charter never authorized Defendants to make such statements or offers.

81.     When Defendants made the representations, they knew them to be false, and said representations were made by Defendants with the intent to deceive and to induce Charter subscribers to use Easy Pay for payment services.  Instead of using the subscriber's money to pay a Spectrum bill, Defendants intended to, and did, fraudulently keep that money for themselves.

82.     On information and belief, Khalid, as the sole member, manager and director of Easy Pay, formed Easy Pay for the sole purpose of engaging in fraud and unfair competition, conspiring to engage in fraud and unfair competition, and other unlawful activities.

83.     There is such unity of interest and ownership that the separate personalities of

Easy Pay and Khalid no longer exist, as the circumstances indicate that Easy Pay is merely a façade for the operations of Khalid.

84. The circumstances detailed throughout this Complaint show that adherence to the fiction of separate corporate existence would sanction a fraud and promote injustice.

85. On information and belief, Khalid, as the sole member, manager and director of Easy Pay has complete control of and directed Easy Pay's activities, has directed those activities for the willful infringement of Charter's marks and purposeful creation of a false affiliation in the public's mind between Easy Pay and Charter and its related entities, and should be held personally liable to Charter for Easy Pay's actions and damages caused by such actions.

86. The corporate veil should be pierced and Khalid should be held personally liable to Charter for Easy Pay's actions and for any damages caused by such actions.

87. As a direct and proximate result of the aforementioned fraudulent conduct, Defendants caused Charter to suffer the damages and injuries herein alleged.

88. Defendants' conduct was outrageous due to their fraudulent intent and reckless indifference to the rights of Charter and its subscribers. Defendants' actions in defrauding Charter were intentional, wanton, willful, outrageous, deliberate, done with evil motive, and in reckless disregard and indifference to the interests and rights of Charter, thus warranting an award of punitive damages in a fair and reasonable amount to be determined at trial or by this Court.

89. Defendants' actions entitle Charter to general and special damages for all of the Defendants' income derived from their past unlawful conduct to the full extent provided by law.

90. Charter has no adequate remedy at law for the continuing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the

Defendants' ongoing actions in perpetuating the above-described fraud.

## SECOND CLAIM FOR RELIEF

### (Against Defendants and John Does 1-5 For Civil Conspiracy)

91.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

92.     Defendants are not alone in their fraudulent smishing attacks on Charter and its subscribers.  Charter subscribers have notified Charter of nearly identical fraudulent schemes perpetrated by other entities.

93.     These nearly identical schemes are no coincidence.  Rather, they are orchestrated by unknown John Does 1-5, who, on information and belief, in and around the time Easy Pay was formed in June of 2021, instructed Defendants over the internet, phone, and/or other means on setting up the fraudulent scheme through one or more of the following acts: (i) the creation of an LLC or other similar entity for the fraudulent purposes described herein; (ii) the use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks to carry out the plan; (iii) the representations necessary to deceive Charter subscribers into remitting confidential information to Defendants; (iv) impersonating Charter subscribers in interactions with Charter; and/or (v) obtaining and using fraudulent payment mechanisms in interactions with Charter.

94.     Defendants and unknown John Does 1-5 have acted, and are acting, in concert to commit the unlawful acts alleged herein, including fraud, infringement, and unfair competition, as part of a common scheme.

95.     Defendants and unknown John Does 1-5 each understood the objectives of the scheme, accepted the objectives of the scheme, and agreed to do their part to further the scheme.

96.     Defendants and unknown John Does 1-5 have agreed to commit the fraud, infringement, and unfair competition alleged herein through one or more of the following acts

that have resulted in damage:  (i) intentionally and deceptively misappropriating and using the

CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks; (ii) falsely

representing and continuing to represent that they are associated with Charter or its Spectrum

brand to Charter and to Charter subscribers; (iii) soliciting, accepting, and retaining money

through the intentional and deceptive misappropriation and use of the CHARTER, CHARTER

SPECTRUM, and SPECTRUM family of marks and other misrepresentations to Charter and

Charter subscribers; (iv) impersonating Charter subscribers in interactions with Charter; and (v)

obtaining and using fraudulent payment mechanisms in interactions with Charter.

97.     The conspiracy described above included Defendants and other John Does that

may be finally determined through discovery in this case.

98.     The corporate veil should be pierced and Khalid should be held personally liable

to Charter for Easy Pay's actions and for any damages caused by such actions for the reasons set

forth in Paragraphs 18-26 and 82-86.

99.     Charter has been and continues to be harmed by Defendants and John Does 1-5's

acts.

100.    Defendants and John Does 1-5's actions entitle Charter to general and special

damages for all of the Defendants and John Does 1-5's income derived from their past unlawful

conduct to the full extent provided by law.

101.    Defendants and John Does 1-5's conduct was outrageous due to their fraudulent

intent and reckless indifference to the rights of Charter and its subscribers.  Defendants and John

Does 1-5's actions in defrauding Charter were intentional, wanton, willful, outrageous,

deliberate, done with evil motive, and in reckless disregard and indifference to the interests and

rights of Charter, thus warranting an award of punitive damages in a fair and reasonable amount

18

to be determined at trial or by this Court.

### THIRD CLAIM FOR RELIEF

**(Against Defendants For Infringement of Registered Trademarks in Violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))**

102.    Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

103.    CCH is the owner of the federally registered service marks CHARTER, CHARTER SPECTRUM, and SPECTRUM.  See Exhibit B.

104.    CCH is also the owner of dozens of other federally registered marks and designs for communications-related services incorporating the SPECTRUM brand.  A partial list includes: SPECTRUM TV, SPECTRUM INTERNET, and SPECTRUM BUSINESS.  See Exhibit C.

105.     CCO and other related Charter entities use the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks with permission from CCH.

106.    The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are valid and enforceable.

107.    Charter and its related entities use the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in interstate commerce.

108.    The acts of Defendants alleged herein constitute the use in commerce, without the consent of Charter, of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in connection with the offering of services related to the provision of communication services, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Charter's rights in one or more of its trademarks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

109.     Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks was willful, intentional, and done with the knowledge that said use was infringing and unauthorized.

110.      The corporate veil should be pierced and Khalid should be held personally liable to Charter for Easy Pay's actions and for any damages caused by such actions for the reasons set forth in Paragraphs 18-26 and 82-86.

111.     Charter has been and continues to be harmed by Defendants' acts.

112.     Defendants' actions entitle Charter to damages for all of the Defendants' income derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117.

113.     Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## FOURTH CLAIM FOR RELIEF

**(Against Defendants For False Association and Trademark Infringement in Violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

114.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

115.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and designs are well known and are used across the United States.

116.     Charter and its related entities have invested significant time, effort, and resources in the development and promotion of their business and the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks throughout the United States.

117.     Charter and its related entities have developed substantial good will in the

CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and has acquired

rights, both by virtue of federal trademark registrations and by common law rights in the

CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

118.    The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are

valid and enforceable.

119.    The acts of Defendants alleged herein constitute the use in interstate commerce of

a word, term, name, symbol, or device, or any combination thereof, or false designation of

origin, in connection with the sale, or offering for sale, of goods in violation of section

43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  These acts are likely to cause

confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

Defendants with Charter, or as to the origin, sponsorship, or approval of Defendants' services by

Charter.

120.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM

family of marks constitutes trademark infringement.

121.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM

family of marks constitutes unfair competition through the creation of a false association.

122.    Defendants used the CHARTER, CHARTER SPECTRUM, and SPECTRUM

family of marks intending to create an association between itself and Charter (or Charter's

related entities).

123.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM

family of marks is willful, intentional, and done with the knowledge that said use is infringing

and unauthorized.

124.    Defendants' use of the marks has led to actual confusion of Charter subscribers.

125.     The corporate veil should be pierced and Khalid should be held personally liable to Charter for Easy Pay's actions and for any damages caused by such actions for the reasons set forth in Paragraphs 18-26 and 82-86.

126.     Charter has been and continues to be harmed by Defendants' acts.

127.     Defendants' acts entitle Charter to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117.

128.     Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## FIFTH CLAIM FOR RELIEF

### (Against Defendants For Unfair Competition in Violation of the New Jersey Fair Trade Act, NJ Rev Stat § 56:4, *et seq.*)

129.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

130.     CCH is the owner of valid and legally protectable trademarks, as set forth in Paragraphs 48-53 and 57-58 above.  CCO uses the trademarks with permission from CCH.

131.     Defendants used the CHARTER, CHARTER SPECTRUM, and/or SPECTRUM family of marks in connection with their scheme to defraud Charter subscribers, as set forth in Paragraphs 6 and 27-72 above.

132.     Defendants' acts have resulted in the unauthorized use of the CHARTER, CHARTER SPECTRUM, and/or SPECTRUM family of marks, and resulted in actual and potential consumer confusion as to the association of Easy Pay with Charter.

133.     Defendants' conduct, as alleged above, constitutes unfair competition under the

New Jersey Fair Trade Act.

134.    Defendants' conduct, as alleged above, shows an intent to deceive.

135.    The corporate veil should be pierced and Khalid should be held personally liable to Charter for Easy Pay's actions and for any damages caused by such actions for the reasons set forth in Paragraphs 18-26 and 82-86.

136.    Defendants' actions entitle Charter to direct and indirect damages for all of Defendants' income derived from their unfair conduct to the full extent provided for by the New Jersey Fair Trade Act, NJ Rev Stat § 56:4-2, et seq. and the common law of New Jersey.

137.    Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SIXTH CLAIM FOR RELIEF

### (Against Defendants For Common Law Unfair Competition)

138.    Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 hereof.

139.    Defendants' conduct, as alleged above, constitutes unfair competition under common law.

140.    Charter has developed significant rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

141.    Defendants' acts, as described in Paragraphs 6 and 27-72, have resulted in the unauthorized use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks, and resulted in actual and potential consumer confusion as to the association of Easy Pay with Charter.

142.    Defendants' conduct constitutes unfair competition under the common law and

shows an intent to deceive the consumer.

143.    The corporate veil should be pierced and Khalid should be held personally liable to Charter for Easy Pay's actions and for any damages caused by such actions for the reasons set forth in Paragraphs 18-26 and 82-86.

144.    Defendants' actions entitle Charter to general and special damages, including, but not limited to, damages in the amount of all of Defendants' income derived from their past unlawful conduct to the full extent provided for by the common law of the State of New Jersey.

145.    Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## JURY TRIAL DEMANDED

Charter hereby demands a jury on all jury-triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Charter prays for judgment as follows:

A.    For judgment that:

    (i)    Defendants have engaged in fraud in violation of the common law of the State of New Jersey;

    (ii)    Defendants have engaged in a civil conspiracy in violation of the common law of the State of New Jersey;

    (iii)    Defendants violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    (iv)    Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    (v)    Defendants' violations of Sections 32 and 43(a) of the Lanham Act were

willful, intentional, and done with knowledge that the use was
unauthorized;

(vi)     Defendants have engaged in unfair competition in violation of the New
Jersey Fair Trade Act, NJ Rev Stat § 56:4, *et seq.*;

(vii)    Defendants have engaged in unfair competition in violation of the
common law of the State of New Jersey;

(viii)   A finding that Charter is entitled to punitive damages; and

(ix)     A finding piercing the corporate veil to hold Khalid personally responsible
for Easy Pay's actions and personally liable for Easy Pay's monetary
judgment.

B.      For an injunction restraining and enjoining the Defendants and their divisions,
subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or
participation with them who receive actual notice of the order by personal service or otherwise,
from (i) making any communication, either written, verbal, or by text message infringing the
CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks; or (ii) making any
communication, either written, verbal, or by text message stating or implying that Easy Pay is
associated with or authorized by Charter, or assisting, aiding or abetting any other person or
entity in doing so.

C.      For an order requiring (i) that the Defendants account for and pay over to Charter
all of the Defendants' profits, derived from their unlawful conduct and for damages as provided
for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117; and (ii) awarding Charter direct and
indirect damages to the full extent provided for by the New Jersey Fair Trade Act and common
law of the State of New Jersey; and

D.      For costs of suit, attorneys' fees, and such other and further relief as the Court shall deem appropriate.

## <u>CERTIFICATION UNDER LOCAL CIVIL RULE 11.2</u>

The undersigned counsel hereby certifies pursuant to Local Civil Rule 11.2 that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  October 5, 2022                    Respectfully submitted,

*/s/ Thomas R. Curtin*
Thomas R. Curtin
Anthony M. Carlino
Kathleen N. Fennelly
McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
1300 Mount Kemble Ave.
P.O. Box 2075
Morristown, NJ 07962-2075
Telephone: (973) 401-7117
Facsimile: (973) 425-0161
tcurtin@mdmc-law.com
acarlino@mdmc-law.com
kfennelly@mdmc-law.com

and

THOMPSON COBURN LLP

Amanda J. Hettinger, 55038MO
(*Pro Hac Vice Application to be filed*)
Robyn H. Ast-Gmoser, 59236MO
(*Pro Hac Vice Application to be filed*)
One US Bank Plaza
St. Louis, Missouri  63101
Telephone: (314) 552-6000
Facsimile (314) 552-7000
ahettinger@thompsoncoburn.com
rastgmoser@thompsoncoburn.com

*Attorneys for Plaintiffs*